JEFFER MANGELS BUTLER & MITCHELL LLP
BENJAMIN M. REZNIK (Bar No. 72364),
*breznik@jmbm.com*
MATTHEW D. HINKS (Bar No. 200750),
*mhinks@jmbm.com*
TALYA GOLDFINGER (Bar No. 294926)
*talyagoldfinger@jmbm.com*
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:   (310) 203-8080
Facsimile:   (310) 203-0567

Attorneys for Plaintiffs EPONA, LLC and MICHAEL
FOWLER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPONA, LLC, a California limited liability company; MICHAEL FOWLER, an individual,<br><br>                Plaintiffs,<br><br>        v.<br><br>COUNTY OF VENTURA, a political subdivision of the State of California; and DOES 1-25, inclusive,<br><br>                Defendants. | CASE NO.   2:16-cv-06372-DMG (PLAx)<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**(1) As Applied Constitutional Violations Based upon First Amendment of the United States Constitution and California Constitution Article 1, Section 2;**<br><br>**(2)  Facial Constitutional Violations Based upon First Amendment of the United States Constitution and California Constitution Article 1, Section 2;**<br><br>**(2)    Civil Rights Violations, 42 U.S.C. § 1983;**<br><br>**(3)    Petition for Writ of Mandate; California Code of Civil Procedure § 1094.5; and**<br><br>**(4)    Declaratory Relief**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Epona, LLC and Michael Fowler complain and allege as follows:

**INTRODUCTION**

1. This litigation is filed to address the unlawful actions of the Defendant County of Ventura discriminating against Plaintiffs and religious assemblies proposed to take place on Plaintiffs' properties in the form of weddings for unlawful and unconstitutional reasons.

2. Wedding events constitute protected expression under the First Amendment to the United States Constitution and the free speech guarantees of the California Constitution, Article 1, Section 2.  Couples express their religious commitments and values in their weddings and the traditions surrounding them.  For example, it is common for religious leaders to serve as wedding officiants.  Couples include religious symbols and rituals in their weddings and related assemblies and gatherings to celebrate the couple's union.  Even secular couples are often married in quasi-religious, spiritual ceremonies that reflect their beliefs and personal commitments similar to religious ceremonies.

3. The particularized message of a wedding is easy to discern, even if the message varies from one wedding to another.  Weddings convey important messages about the couple, their beliefs, their relationship to each other, to their community, to their religion and to their God.  The core of the message in a wedding is a celebration of marriage and the uniting of two people in a committed long-term relationship. Both the ceremony itself and the related celebrations and gatherings are bound up in religious symbolism and ritual expressing, among other things, messages of love, joy, spiritual commitment, abundance, and expressions of hope for the future.

4. The United States and California Constitutions protect more than political speech.  Indeed, there are a host of other types of communications that command the same respect and are accorded the same measure of Constitutional protection as political speech.  Moreover, the Constitution also protects more than just the spoken and written word.  It protects expressive conduct that conveys a

PRINTED ON
RECYCLED PAPER
62317623v1

particularized message, such as those expressed in weddings and other religious events that are subjected to the County's unlawful regulations, which undermine the privacy of persons who wish to engage in expressive conduct and assemble for religious purposes.

5.    The County's unlawful actions in respect to Plaintiffs' expressive conduct and religious assemblies violate these Constitutional protections.  Plaintiffs therefore bring this action to set aside those unlawful acts and to seek redress for the financial damages these unlawful regulations have caused them to incur.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action under at least 28 U.S.C. § 1331 on the basis of the existence of a federal question.  Ancillary jurisdiction over the state law claims is proper under 28 U.S.C. § 1367 because they arise under a common nucleus of operative facts as the federal claims alleged herein.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) since the actions complained of in this Complaint and the subject property are sited in the Central District of California.

## THE PARTIES

8.    Plaintiff Epona, LLC ("Epona") was and is a limited liability company organized and duly existing under the laws of the State of California and doing business in the County of Ventura.  Sheila Mayfield is the manager of the Epona property that is the subject of this Complaint.  Ms. Mayfield is a Universalist Life minister.  She, and other ministers, desire to and would, if permitted by the County, preside over weddings at the property.

9.    Plaintiff Michael Fowler ("Fowler") is an individual residing in the County of Ventura and owner/resident of Epona Farms.

10.    Epona and Fowler are collectively referred to herein as "Plaintiffs."

11.    Defendant County of Ventura is a general law county of the State of California existing under the Constitution of the State of California with the capacity

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

to sue and be sued.  As used herein, the term "County" includes, but is not limited to, County employees, agents, officers, boards, commissions, departments, and their members, all equally charged with complying with duties under the County Municipal Code, and with the laws of the State.

12.    Plaintiffs do not know the true names of defendants DOES 1 through 25, inclusive, and therefore sue them by those fictitious names.  The names, capacities and relationships of DOES 1 through 25 will be alleged by amendment to this Complaint when the same are known.

13.    Defendant County together with DOES 1 through 25, inclusive, may be referred to herein collectively as "Defendants" and individually as a "Defendant."

14.    Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned in this Complaint, each of the Defendants was the agent, representative, partner, independent contractor and/or employee of the other Defendants, and in doing the things alleged in this Complaint was acting within the course and scope of that agency, representation, partnership, contract and employment.  Plaintiffs are further informed and believe, and based thereon allege, that each of the fictitiously named Defendants is in some manner responsible for the acts, occurrences and transactions set forth herein and are legally liable to Plaintiffs herein.  Plaintiffs are further informed and believe, and based thereon allege, that each of the fictitiously named Defendants took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiffs for the relief prayed for herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.    Plaintiffs' Property

15.    Plaintiffs are the owners of real property located at 1050 Potrero Road (the "Property") in the community of Hidden Valley in an unincorporated area of the County of Ventura.  The Property is approximately 40 acres and is zoned under the County's municipal code for agricultural purposes.

PRINTED ON
RECYCLED PAPER
62317623v1

16.     Hidden Valley, located in southeastern Ventura County, is an affluent equestrian ranch community, home to rich and famous residents, and generally consisting of parcels at least 20 acres in size, and oftentimes considerably larger.

17.     The formal zoning designation of the Property is AE-40 (Agriculture Exclusive, 40 acre minimum).   According to the County's zoning ordinance, the purpose of the AE zone is "to preserve and protect commercial agricultural lands as a limited and irreplaceable resource, to preserve and maintain agriculture as a major industry in Ventura County and to protect these areas from the encroachment of nonrelated uses which, by their nature, would have detrimental effects upon the agriculture industry."   The Property is within the area governed by the Lake Sherwood/Hidden Valley Area Plan.

18.     As described below, the Property is subject to a legislative policy determination enacted by the County's Board of Supervisors in favor of expanding the allowable uses of agricultural property to maintain their viability and to encourage farmers to continue farming.   As part of that legislative decision, the Board made a policy choice effectively finding wedding venues to be compatible with the AE zone.

19.     The Property is also subject to the County's SOAR ("Save Our Open Space Agricultural Resources") policies, which severely restrict Plaintiffs' ability to use the Property for anything other than agriculture.

20.     The Property is not located within any of the County's rural residential zones.   All of the surrounding properties are zoned either for agricultural exclusive uses or for open space.   The surrounding properties are all very large and spaced far apart.   The two properties bordering Epona Farms on the west are at minimum 20 acres in size, the properties to the north are over 100 acres in size; and the two properties to the south are approximately 225 acres and 446 acres, respectively.   The property to the east is over 2000 acres.   The nearest property border is around 830 feet—nearly 3 football fields—from the proposed wedding site on the Property.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

21.     Both the agriculture and open space zones in the County allow for a wide variety of commercial activities and businesses.  Accordingly, there are a number of commercial businesses that operate in Hidden Valley near the Property.  In fact, most of the properties surrounding Epona Estate run some form of commercial business year round.

22.     Alu Jumps USA is located at 933 West Potrero Road, which is less than a mile away from the Property.  Alu Jumps is a retailer of aluminum jumps used in connection with equestrian events, tack trunks and feed carts and operates 7 days a week.  Other businesses near Epona Farms include a variety of commercial sellers of cattle, horses and plants, including a large scale native plant and grass business, commercial fair businesses; a hauling company; boarding and stud facilities; an equestrian training facility; an overnight summer camp; and a facility for monthly equestrian clinics with a clubhouse for spectators.  Based on the County's responses to Public Records Act requests, Plaintiffs are informed and believe and on that basis allege that none of these commercial businesses were required by the County to obtain a conditional use permit to conduct their commercial activities as the County required of Plaintiffs to hold weddings.

23.     In addition, Hidden Valley is also home to a great deal of filming activity and is, in fact, one of the most prominent and frequently-used outdoor filming sites in Southern California.  The County issued more than 100 film permits for filming in Hidden Valley in 2016 alone.  Many, if not all, of those permits allowed numerous filming days per permit.

24.     Plaintiffs are informed and believe and on that basis allege that there are no permitted places to hold weddings in Hidden Valley.  The nearest permit holder is Sherwood Ranch Country Club, which is located in a residential area outside of Hidden Valley proper.  According to County Public Records Act responses, there are less than 5 farms in the entire County, and 15 venues total, permitted to hold weddings.  This has resulted in a shortage of available wedding venues in the area

Third Amended Complaint

PRINTED ON
RECYCLED PAPER
62317623v1

and those few permitted venues are consistently overbooked.

25.     The Property is home to Epona Farms, a picturesque, 40-acre working ranch and world class vineyard.  The vineyard was planted on the Property in 2014. It is already the third largest vineyard in the Malibu Coast American Viticultural Area.  Epona Farms also includes equestrian dressage facilities, a professional horse barn, and a koi pond.  Within the vineyard there is a formal rose garden, a sustainable vegetable garden and a waterfall garden.  As part of the design, Plaintiffs built permitted arbors and installed a rose garden with the intent that it could be used for weddings with a variety roses, geraniums and other flowers.  The Fowler home and farmworker/ranch hand dwellings are also located on the Property.

26.     In addition to the costs of acquisition, Plaintiffs have invested substantial funds in permitting, construction and other fees and costs, including around $66,000 in costs paid to the County, attributable to the establishment of the facilities necessary to hold weddings at the Property when approved.  The facilities were built prior to Plaintiffs' application for a conditional use permit for weddings and enhanced the agricultural nature of Epona Farms by adding gardens, arbors, and aquaculture. Unlike other venues that have in the past received approval to hold weddings, no existing agriculture was or was proposed to be removed from Epona Farms.

27.     Plaintiffs own no other property in the County and have no right to access or use other property in the County to hold weddings.

28.     A vineyard, such as the one being established on the Property requires many years of costly investment to produce wine-quality grapes.  The first harvest occurred in 2016 and wines were not ready until 2018 and only on a very limited scale.  The horse ranching, farming and equestrian activities that also currently take place at the Property, while widely considered to be a community asset, do not provide income.  Thus, Plaintiffs seek to host on the Property private, invite-only weddings and related celebrations for friends and family and also for the purpose of generating sufficient income to support and sustain the cultivation of the vineyards

PRINTED ON
RECYCLED PAPER
62317623v1

1   and the gardens, and enable the ongoing employment and housing of the farm's

2   employees.  Other proposed events would also center around helping special needs

3   children, teenagers and adults learn job and life skills while working in the vineyard

4   and organic garden.

5       29.   Given its remarkable beauty and unique location, Epona Farms is an

6   ideal place for couples to express their love and lifetime commitment to one another

7   in a wedding and celebration in a natural environment.  As an example, a traditional

8   Jewish wedding with a chuppah is meant to be staged outdoors, under the stars.

9   Epona Farms is particularly situated to accommodate these needs.

10          **B.      The County's Regulation of Weddings**

11      30.   The NCZO divides the noncoastal areas of the County into several

12   zones.  Under NCZO § 8101-3.2, the County prohibits the use of land in the County

13   except as explicitly authorized by the NCZO.

14      31.   Outdoor Events, defined by the NCZO and which includes weddings, are

15   permitted in certain zones, but only with the approval by the County of a conditional

16   use permit.

17      32.   Plaintiffs are informed and believe and on that basis allege that, in its

18   implementation of the NCZO, the County did not require a conditional use permit,

19   or any other permit, to hold on properties zoned for agricultural uses non-public

20   outdoor recreational events such as social events, parties or political or charitable

21   fundraisers not falling within the enumerated list of outdoor events.  However,

22   where a property owner sought to hold a wedding on agricultural-zoned lands, the

23   County required the issuance of a conditional use permit, not only for the wedding,

24   but any planned additional temporary outdoor events, including social events,

25   parties or political or charitable fundraisers that are not otherwise subject to a

26   conditional use permit requirement under the County's practice and interpretation of

27   its ordinances.

28      33.   The manner in which the County enforced its regulations governing

JMBM  Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
62317623v1

weddings and other events placed the County in the unconstitutional position of distinguishing between "family and friends" events and other events in violation of Plaintiffs' privacy rights, and the privacy rights of Plaintiffs' wedding participants and guests, guaranteed by the United States and California Constitutions.

### 1. Conditional Use Permit Standards Governing Plaintiffs' Application

34.     At the time of Plaintiffs' application for approval of weddings on the Property, conditional use permit approval standards were governed by a previous version of NCZO §§ 8102-0 and 8111.1.2.1.1 (the "Governing Ordinance"), which were subsequently amended by the County as a direct result of the filing of this lawsuit.

35.     The previous version of NCZO § 8102-0 defined Temporary Outdoor Events as, "[o]utdoor recreational events such as harvest festivals, amusement rides, historic re-enactments, animal events, art shows, concerts, craft fairs, *weddings, and religious revival meetings*".  (Emphasis supplied.)

36.     The Governing Ordinance also provided that, in addition to the payment of certain fees and charges, a conditional use permit may only be issued where the "standards" described in subsections (a) though (f) are met, or "if such conditions and limitations, including time limits, as the decision-making authority deems necessary, are imposed to allow the standards to be met."  In addition, "[s]pecific factual findings shall be made by the decision-making authority to support the conclusion that each of the[] standards, if applicable, can be satisfied."

37.     The Governing Ordinance provided that, a conditional use permit "*may only be granted*" where all applicable fees have been paid and if the decision maker determines in its discretion that all of the following standards are met:

(a)     The proposed development is consistent with the intent and provisions of the County's General Plan and of Division 8, Chapters 1 and 2 of the Ventura County Ordinance Code;

PRINTED ON
RECYCLED PAPER
62317623v1

9

JMBM | Jeffer Mangels Butler & Mitchell LLP

JMBM | Jeffer Mangels
Butler & Mitchell LLP

(b)     The proposed development is compatible with the character of surrounding, legally established development;

(c)     The proposed development would not be obnoxious or harmful, or impair the utility of neighboring property or uses;

(d)     The proposed development would not be detrimental to the public interest, health, safety, convenience, or welfare;

(e)     The proposed development, if allowed by a Conditional Use Permit, is compatible with existing and potential land uses in the general area where the development is to be located; and

(f)     The proposed development will occur on a legal lot.

38.     In addition, the Governing Ordinance provided that, where the use is proposed for a lot located within the AE zone, "the following standards shall be met or be capable of being met with appropriate conditions and limitations being placed on the use:"  (a) "the establishment or maintenance of this use will not significantly reduce, restrict or adversely affect agricultural resources or the viability of agricultural operations in the area"; (b) "structures will be sited to minimize conflicts with agriculture, and that other uses will not significantly reduce, restrict or adversely affect agricultural activities on-site or in the area, where applicable"; and (c) "the use will be sited to remove as little land from agricultural production (or potential agricultural production) as possible."

39.     Under the Governing Ordinance, the applicant bore "the burden of proving to the satisfaction of the appropriate decision-making authority that the foregoing standards can be met.  In addition, given the use of the permissive "may" in the Governing Ordinance, even if the evidence compelled the conclusion that each of the enumerated standards had been met, the decision maker retained the authority  to deny the requested conditional use permit in his, her or its discretion.

40.     Although the Governing Ordinance required that "[s]pecific factual findings shall be made" by the decision making authority to approve a conditional use

PRINTED ON
RECYCLED PAPER
62317623v1

permit, the ordinance required no such findings where the decision maker denied a conditional use permit.  County counsel acknowledged on the record during Plaintiffs' Planning Commission hearing that no such findings were required.

41.    These standards unlawfully vested in the decision making body—depending upon the circumstances either the Planning Director, Planning Commission or the Board of Supervisors—with unlimited and unbridled discretion to approve and permit, or refuse to approve and permit, protected expressive conduct, or to impose conditions upon the approval of protected expressive conduct, in violation of the First Amendment of the U.S. Constitution and the free speech provisions of the California Constitution, Article 1, Section 2.  In addition, the County's ordinances failed to ensure that a decision made in connection with a conditional use permit is based upon objective criteria.

C.    **The County's Rural Tourism Program**

42.    Rural Tourism has been consistently recognized by the County's Board of Supervisors as an important business for the County to sustain the economic viability of the County's agricultural lands.

43.    Plaintiffs are informed and believe and on that basis allege that in July 2003, the County received a grant of $70,000 from the Economic Development Administration of the U.S. Department of Commerce for the study of Rural Tourism.  The Rural Tourism Program was intended to promote rural tourism to complement the County's agricultural industries and was designed to provide, among other things, agricultural property owners with means to supplement their income to assist in keeping agricultural lands economically viable thereby preserving agriculture within the County.

44.    Pursuant to the Rural Tourism Program, the County in March 2005 adopted an ordinance amending various part of the NCZO.  Among those amendments, the County expanded the permissible non-farming activities for financial gain that could occur on property zoned AE with an approved CUP, and,

JMBM  Jeffer Mangels Butler & Mitchell LLP

PRINTED ON RECYCLED PAPER
62317623v1

1    specifically, amended the definition of "Festivals and Similar Events" in the NCZO to

2    include weddings and increased the number of allowable events from 30 to 60 in any

3    calendar year.

4        45.    The County also expanded the uses permissible in the AE zone to

5    include Bed and Breakfast Inns, corporate retreats and for-profit camps such as

6    guest ranches and working ranches.

7        46.    As part of the amending ordinance, the County's Board of Supervisors

8    specifically determined that the changes to the ordinance, including enabling owners

9    of AE property to have up to 60 weddings a year on their property was "in the interest

10   of public health, safety or general welfare and good zoning practice."

11       47.    The County and the Board also made the determination that such

12   temporary outdoor events are a valid business use for all properties in the County

13   zoned AE, OS, RA so long as they satisfy the pre-requisites for obtaining a

14   conditional use permit.

15       48.    The amending ordinance was not challenged by any persons or entities at

16   the time of adoption and remains the law of the County.

17       **D.    The County's Discrimination Against Wedding Uses**

18       49.    Although it is the law of the County that wedding uses be promoted as

19   appropriate complement to agricultural-zoned lands and are permissible in

20   agricultural-zoned areas with a properly-mitigated conditional use permit, County

21   officials turned decidedly anti-wedding and refused to permit any new properties in

22   the AE zone for wedding purposes even if the standards for issuance of a permit had

23   been met and record evidence demonstrated that the approval of wedding uses would

24   cause no discernible impacts to surrounding properties or the community in general.

25       50.    County decision makers with approval authority over CUPs for

26   weddings repeatedly voiced their objections to weddings taking place in agricultural-

27   zoned areas of the County.  One County decision maker described the issue as a

28   "threshold problem" with CUP applications seeking approval of weddings; he and

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   others refered to weddings as "high density urban uses" and "the worst possible use"

2   that are allegedly "totally incompatible" with the supposed "rural character" of all

3   agricultural-zoned properties; that the "use should [not] be allowed at all" or

4   "tolerated at all"; and that allowing weddings to occur in agricultural-zoned lands

5   "promotes more commercial development."   Another planning commissioner, who

6   also refused to permit weddings in agricultural zoned areas claimed it is time to

7   "revisit" the ordinance permitting weddings with a conditional use permit.

8       51.   The attitudes and biases of County decision makers against weddings in

9   agricultural-zoned areas of the County, despite the facts that weddings are not only an

10   allowable use but are an encouraged and promoted use per County policy, constituted

11   an illicit *de facto* moratorium on such uses.  Plaintiffs are informed and believe and

12   on that basis allege that, despite numerous applications, the County refused to

13   approve a single new conditional use permit application for weddings in three years

14   even though multiple applications had been filed.

15       52.   At the same time, the County regularly permitted and allowed

16   agricultural-zoned properties to be used for other types of temporary outdoor events,

17   not including weddings, even though such events have the same, and in some cases

18   even more, impacts to the surrounding community, including noise and traffic

19   impacts.

20       53.   For example, in or around July 2016, the Planning Director approved a

21   modified conditional use permit for a property zoned AE-40 to allow the property to

22   be used for non-wedding events open to the public for 31 days with maximum

23   attendance of 4,000 customers per weekend day and total anticipated attendance of

24   20,000 persons for a 10-year period.  Notably, the Planning Director approved the

25   application without referring it to the Planning Commission as she had done with

26   Plaintiffs' much narrower conditional use permit application.

27       54.   Given the biases towards weddings exhibited by County officials and

28   decision makers, conditional use permit applicants seeking to use their agricultural

PRINTED ON

RECYCLED PAPER
62317623v1

1  properties for temporary outdoor events per the County's Rural Tourism policies,
2  were regularly advised of the County animus and deleted wedding uses from the
3  scope of their permit requests.

4      55.    The County regularly allowed property owners to use their agricultural-
5  zoned properties, including properties in Hidden Valley, for temporary outdoor
6  events without an approved conditional use permit application, including parties,
7  fundraisers and other events.  The County often justified its disparate treatment of
8  properties and discriminatory treatment of wedding uses by referring to such events
9  as supposedly allowable "accessory uses."  However, the County maintained no clear
10 and objective policies and definitions of "accessory uses."  Given the anti-wedding
11 disposition of numerous County officials, property owners seeking to use their
12 properties for wedding uses were regularly singled out for disparate treatment without
13 a rational basis therefor.

14     56.    The vagueness of terms used in the County's ordinance, and the
15 vagueness of County policies concerning weddings, and the resulting subjective
16 random interpretations of such terms and policies, including "accessory uses,"
17 "weddings" and "commercial" versus "non-commercial," caused decades of turmoil
18 and confusion in the County regarding the allowable use of properties for weddings.
19 The various departments of the County, including County Counsel, the Resource
20 Management Agency, Planning staff and enforcement officials, did not have
21 sufficient clarity of these terms and policies to prevent discrimination.   One
22 Commissioner noted during the course of Plaintiffs' hearing before the Planning
23 Commission the inconsistencies with the County's ordinances and how it was being
24 applied, indicating the matter needed to be dealt with "at the supervisor's level".
25 Consequently, the County has a history of discriminatory treatment in respect to
26 wedding uses.  Planning staff and enforcement officials were effectively vested with
27 unlimited discretion to allow temporary outdoor events leading to discriminatory
28 enforcement.

JMBM | Jefer Mangels
Butler & Mitchell LLP

57.     In one example, a neighboring property owner staged a commercial multi-day equestrian event on his property.  The event was open to the public and tickets were sold online.  The event drew vendors and more than 900 visitors and scores of vehicles per day.  The property owner did not have a permit for the event and did not apply for a conditional use permit for a temporary outdoor event.  No traffic control was provided and alcohol was served.  The property owner was not penalized for the event.  The property owner regularly hosts large multi-day events on the property as do many other Hidden Valley property owners and residents.

58.     The foregoing example was typical of events that occur in the County without a permit and none of the safeguards of conditions and mitigation measures attached to a properly-issued conditional use permit.  Many other property owners in Hidden Valley regularly hold large-scale parties, charitable and political fundraisers, tournaments and festivals without permits and without penalty.  The County maintains a policy and practice of not citing or penalizing such events even though they have the same or greater community impacts as compared to weddings.

59.     Plaintiffs received explicit authorization from the County to hold other temporary outdoor events on their Property, including an event for the Malibu Vintners Association, without the requirement of a conditional use permit.  Plaintiffs were not similarly allowed to hold a single wedding in the absence of a conditional use permit.

60.     Plaintiffs sought advice and guidance from the County Planning staff as to what types of events would be allowed and considered "accessory" and what types would be disallowed and received inconsistent and unsupportable responses.  Planning staff advised Plaintiffs at one point that Plaintiffs could not host or hold any social events at Epona Farms at all and, in particular, no weddings—commercial, family or otherwise, indoor or outdoor—and that Plaintiffs would receive a notice of violation if they did so.

61.     In other cases, the discriminatory treatment of wedding uses was

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

expressly codified in the NCZO as reflected by the numerous commercial activities that were permitted by right in the AE zone, including in Hidden Valley.  Such commercial ventures have similar or pronounced impacts upon the community yet were allowed without a conditional use permit.

62.    The County's discriminatory treatment of wedding uses is perhaps most pronounced in relation to the large amount of commercial filming activity the County permits by right in agricultural areas.

63.    "Occasional" filming activities are permissible as of right on properties throughout the County, including in the AE Zone.  "Occasional" is defined by NCZO § 8107-11.1 as, among other things, filming activities that do not exceed 60 days on any lot in any 180-day period.

64.    Thus, the NCZO allows for film permits to be issued for a period of up to 60 days in any 180-day period and more than 110 days in a year.  Other than this limitation, there is no restriction in the NCZO on the number of permits a single property owner can avail herself of during a single year period.  In fact, there is no restriction in the NCZO against a property owner allowing multiple filming projects to occur on her property during the same time frame and even on the same day. Filming can begin as early as 7am and last until 10pm with trucks and equipment arriving as early as 6am and leaving as later as 12:00 midnight.

65.    Plaintiffs are informed and believe and on that basis allege that, with few exceptions, the County issues filming permits upon receipt and review of a short application form.  If none of the answers to the questions establish non-compliance with the County's film ordinance, NCZO § 8107-11.1, a zoning clearance must be issued as it is ministerial in nature and therefore non-discretionary, and a film permit issued.

66.    There is also no restriction on obtaining consecutive permits for additional 180-day periods during any given year.  Under the NCZO, filming may occur from 7 a.m. until 10 p.m. and 24 hours a day if the permittee is designated as a

PRINTED ON
RECYCLED PAPER
62317623v1

back lot, studio or sound stage.  Traffic delays of up to 3 minutes at a time are allowed during both peak and non-peak hours and, in reality, run longer when filming on the roadway is occurring.  If the nearest residence is more than 2,000 feet away, there are no restrictions on noise levels including those from guns and explosives.  If the distance is less than 2,000 feet, the noise level simply must not exceed that which "is normal for the area and surrounding properties." Light and glare must not exceed what is "normal for the area."

67.    Even if the County's standards are not met by a film company, a ministerial zoning clearance will still be issued if more than 50% of the residents (only one needed per household) living within 1,000 feet of the boundary of the filming property sign a waiver.  In Hidden Valley, with such large properties, few if any signatures are necessary to meet this requirement and enable filming to occur at any time of the day or night with excessive noise and lighting and impeding the flow of traffic.

68.    The NCZO designates no limitations on the type of events that may be filmed, including festivals, parties and weddings whether fictional or for reality shows.  The permit application indicates only that if a concert, party or special event will be filmed, that a "Temporary Shows" permit or "Dance Hall" permit may be required (from the local County Sherriff, not the Planning Department), but not a Temporary Outdoor Event CUP.

69.    Given the lack of regulation, Plaintiffs are informed and believe and on that basis allege that filming occurs in Hidden Valley on a constant basis year-round.  According to County records, there are 15 locations in the Hidden Valley/Lake Sherwood Area Plan community for which over 135 film permits were issued between January 2015 and April 2016.  The total hours of filming activity allowed by film permits at these locations in that time period was 4,219.  The most filmed location was the property located at 235 West Potrero Road for which 1,028 hours of filming activity was permitted in the January 2015 and April 2016 time period.  That property

JMBM

Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER
62317623v1

is located around 2.2 miles from Plaintiffs' property.

70.    A total of 2,012 hours of filming activity was permitted by the County pursuant to the ministerial provisions of the NCZO on properties within one mile of Plaintiffs' property in the January 2015 and April 2016 time period located at: 929/930 West Potrero Road (219 hours); 981 West Potrero Road (382 hours); 1350 West Potrero Road (484 hours); 999/1201 West Potrero Road (433 hours); and 1388 West Potrero Road (494 hours).  Filming subjects allowed by these permits included pyrotechnics, the use of aircrafts and helicopters, concerts, parties or special limited events, gunfire and explosions.

71.    Filming activities allowed by these permits have considerably more impacts upon the community than weddings, including especially noise and traffic impacts.  The County holds no rational basis to allow commercial filming activities to take place in Hidden Valley by right while subjecting weddings to conditional use permit procedures.  The County had no rational basis to permit the extensive amount of commercial filming activity to take place in Hidden Valley while at the same time refusing to allow Plaintiffs to hold a single wedding on their Property.

72.    The County's discriminatory treatment of weddings is patent when compared with activities permitted by a film permit.  For example, to the west of Epona Farms is a 20-acre ranch known as Shadow Oaks Ranch.  Recently, Shadow Oaks Ranch was the site of a major film production that lasted 32 days and most nights.  On some days, filming occurred around the clock—*i.e.*, for 24 hours a day. The production crew, cast and staff numbered around 100-125 persons and there were 100 cars parked on the property as well as 10-ton trucks and trailers.  The production included bright lights and, on a few days, loud music past 10 pm.  The filming included a massive party scene with music and alcohol, which included at least 500 people and hundreds of cars.  The producer/director of the film shoot was very famous and also a resident of Hidden Valley.  Plaintiffs are informed and believe and on that basis allege that no violation was issued by the County.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

73.     By contrast, in 2015, Plaintiffs secured a ministerial film permit from the County to allow the filming of a reality television show.  The show involved the filming of an actual wedding of a same-sex couple.  The County later confirmed that the filming activities included the filming of the wedding and issued Plaintiffs an NOV on account of the forbidden practice of holding a wedding in the absence of a discretionary conditional use permit.

74.     In other words, the County permits filmmakers to film parties with hundreds of people yet claims to refuse to allow filmmakers to film weddings without a discretionary permit.  As such, the County's practices under its ordinances are content based.  The County has no rational basis to permit ministerially the filming of an event while at the same time prohibiting the filming of a wedding.

75.     The filming event was later cited and used by the County as partial grounds to deny Plaintiffs' conditional use application to permit weddings on the Property.

76.     Under NCZO § 8101-4.4, terms not defined therein are "interpreted as defined in the Ventura County General Plan or conventional dictionaries in common use."  The term "wedding" is not defined in NCZO or General Plan.  Accordingly the dictionary definition of weddings, which recognizes that a wedding involves a marriage ceremony and celebration, governs.  The County's discrimination against weddings in favor of non-wedding events means that the County discriminates against events that have religious significance.

77.     In the absence of the conditional use procedures established by the County's ordinances, Plaintiffs were left with no outlet to engage in the types of expressive conduct they wish to engage in and are and would be forbidden from holding religious assemblies on the Property.  The County's ordinances, even in the absence of the unconstitutional conditional use procedures, therefore failed to leave open alternative channels for communication of the information expressed as part of weddings and opportunities to assemble for religious purposes.

PRINTED ON
RECYCLED PAPER
62317623v1

78.     The County held no legitimate zoning or police power justifications for discriminating against Plaintiffs' weddings, or weddings in general, in the manner described above.  The County's practice of requiring a conditional use permit for weddings but not for other persons' or other outdoor recreational events as alleged above amounts to an unconstitutional content-based regulation of expressive conduct and anti-religious bias.

79.     Accordingly, the County's actions have had the effect of discriminating against Plaintiffs and Plaintiffs' speech, assembly and religious-based activities and its application of regulations governing weddings, including the regulations of former NCZO §§ 8102-0, 8105-4, 8111.1.2.1.1 and 8111.1.2.1.2 to Plaintiffs and Plaintiff's Property have occurred in an unconstitutional manner.

**E.**     **Plaintiff's Application for a Conditional Use Permit to Hold Weddings at the Property**

80.     On or about April 12, 2015, Plaintiffs applied to the County for a conditional use permit to allow Plaintiffs to use the Property for a variety of uses falling under the definition of "festivals, animal shows, and similar events, temporary outdoor" as used in former NCZO § 8102-0, including, specifically, permission to use the Property to hold weddings.  As alleged above, the application was subjected to the Governing Ordinance.

81.     No physical work was proposed to be done under the proposed conditional use permit.  All physical work for facilities to hold the weddings had been previously constructed under other permits.  The conditional use application would permit only the use of the Property for weddings.

82.     Plaintiffs' CUP application sought the County's approval to permit a variety of social events at the Property; however, Plaintiffs' chief goal in applying for a CUP, just like it was when Plaintiffs invested the funds to establish the necessary facilities, was to obtain the County's permission to host weddings.

83.     Moreover, County staff advised Plaintiffs to include in their application

JMBM | Jefer Mangels Butler & Mitchell LLP

requests to hold additional temporary outdoor events that Plaintiffs might consider at Epona Estate.  The County's Planning Director instructed Plaintiffs that any types of events that Plaintiffs intended to hold, including private, social events, would need to be listed as part of an approved CUP application or would be precluded and no longer allowed.

84.     In addition, Plaintiffs became aware that there was considerable resistance, as alleged above, within the County to permitting additional properties for wedding uses.  Not only did Plaintiffs want to obtain the flexibility to hold additional types of events, it was Plaintiffs' belief, that by including additional types of events in Plaintiffs' application beyond weddings, the application would be more politically palatable and it would be more likely that the application would be approved.

85.     The process of preparing the CUP application and responding to the County's various requests for additional information was lengthy, tedious and costly. The CUP application was rigorously reviewed by the County's Resource Management Agency, and the County's Planning, Public Works, Traffic, Environmental Health, Fire and Sheriff's Departments, which *all* commented and were in favor of approval. As part of the application processing, Plaintiffs submitted separate sound and traffic impact analyses by independent County-recognized experts who analyzed the impacts of the application and found any possible impacts to the community from weddings to be insignificant.

86.     The County subjected Plaintiffs' application to environmental review under the California Environmental Quality Act.  As the environmental clearance document for the application, the County prepared a mitigated negative declaration ("MND").  Plaintiffs supplied a great deal of information and worked closely with the County on the preparation of the MND, which is a lengthy and detailed document with extensive mitigation measures, to which Plaintiffs agreed.

87.     The MND identified 4 "potentially" significant environmental effects of the project proposed by the CUP application:  1) air quality impacts—*i.e.*, dust—due

JMBM | Jefer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
62317623v1

1   to the use of on-site dirt access roads and parking areas; 2) a biological resources
2   impact due to the potential loss of a young oak tree that Plaintiffs had planted in the
3   parking area; 3) noise impacts from the proposed outdoor events; and 4) law
4   enforcement/emergency impacts.  The MND therefore proposed extensive conditions
5   to mitigate the minor potentially-significant impacts.  Plaintiffs agreed to accept all of
6   those conditions and incorporate them into the project.  With the imposition of those
7   mitigation measures, the MND concluded that Plaintiffs' CUP application would
8   entail *no* environmental impacts upon the surrounding community that had not been
9   mitigated to less than significant levels.

10        88.    As to noise, which was the main concern voiced by opponents of
11   Plaintiffs' CUP application, the MND noted that the proposed events would include
12   the use of a PA system for DJs and/or bands and will be monitored and regulated by a
13   staff member with a decibel reader.

14        89.    To assess potential noise impacts, Plaintiffs retained an acoustic expert
15   from Meridian Consultants to prepare a detailed noise study.  The study concluded,
16   based on empirical evidence and testing, that the maximum noise that would be
17   allowed to be generated during events utilizing monitoring devices continuously
18   checked by staff throughout events will comply with the County's Noise Policy.  The
19   study was performed twice to provide additional information required by Planning
20   staff resulting in a delay of at least a month.  The report also noted that much of the
21   ambient noise is generated by traffic on Potrero Road.  Notably, the County does not
22   require noise monitoring for over-the-counter commercial film permits, nighttime
23   filming, or for the many private outdoor parties, commercial and political fundraising
24   events and celebrations (including family weddings) which take place in Hidden
25   Valley on a regular basis and contribute significantly to ambient noise levels.

26        90.    The County-prepared MND concluded that with the extensive mitigation
27   measures described in the document, "the project-specific noise impacts will be less-
28   than-significant, and the proposed project will not make a cumulatively considerable

JMBM  Jeffer Mangels Butler & Mitchell LLP

PRINTED ON RECYCLED PAPER
62317623v1

1    contribution to a significant noise impact."  County decision makers noted how well

2    prepared, professional and detailed Plaintiffs' application was.

3          91.    Prior to the imposition of the *de facto* moratorium on wedding uses in

4    agricultural-zoned lands, the County approved conditional use permit applications

5    (even for venues with multiple code violations) for weddings based upon similar

6    reports and with less extensive mitigation than offered by Plaintiffs.

7          92.    The other main concern voiced by Plaintiffs' opponents was traffic that

8    would be generated by events at Epona Estate.  The MND did not even a mention a

9    potential impact to traffic.  In fact, consistent with Plaintiffs' traffic study, the MND

10   states that, "[t]he proposed project will not generate unsafe traffic conditions."

11         93.    According to Planning Department staff, "the traffic associated with the

12   proposed project will be temporary and infrequent, and likely will occur along

13   Potrero Road and Hidden Valley Road approximately one hour before and one hour

14   after the scheduled temporary events.  If the worst case scenario occurred, in which

15   the maximum number of guests arrived uniformly over one hour (375 guests at a

16   conservative carpooling rate of two guests per vehicle), then the event traffic would

17   generate approximately three vehicles per minute.  Therefore, the proposed project is

18   unlikely to generate traffic that will significantly affect the [level of service] of

19   Potrero Road or Hidden Valley Road."  (By contrast, filming projects permitted by

20   right can bring hundreds of vehicles and large trucks with heavy equipment).

21         94.    Plaintiffs' conditional use permit application was governed by former

22   NCZO §§ 8102-0, 8105-4, 8111.1.2.1.1 and 8111.1.2.1.2.  Plaintiffs' application met

23   all technical and objective requirements for the holding of temporary events at the

24   Property required by the NCZO.  Planning staff recommended approval of the

25   application.

26         95.    Under former NCZO § 8105-4, the initial decision maker for a

27   conditional use permit for temporary outdoor events is the Planning Director.

28   However, given the considerable opposition and resistance to weddings by County

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
62317623v1

decision makers, here, the Planning Director, pursuant to former NCZO § 8111-4.1.1.b, deferred her decision on Plaintiffs' application to the Planning Commission "due to potential public controversy involving the proposed project."

96.    The rationale of the Planning Director for taking the extremely unusual and rare step of referring Plaintiff's application to the Planning Commission for initial decision was a subterfuge.  No substantial "public controversy" had arisen.  At the time the Planning director made the decision, the County had received only one comment letter and staff concluded that the letter raised no legitimate reason not to approve the application.

97.    Plaintiffs are informed and believe and on that basis allege that the "potential public controversy" referred to by the Planning Director was the fact that the application sought approval of weddings and County decision makers were now decidedly anti-wedding.  The decision of the Planning Director to refer this allegedly "controversial" application to the Planning Commission falsely cast the application in a negative light to Plaintiffs' prejudice.

98.    The Planning Commission held a public hearing on Plaintiffs' application on March 10, 2016.  The hearing lasted several hours.  Numerous people spoke both in favor and against the application.  Project opponents and, ultimately, Planning Commissioners focused their arguments and comments on weddings, and specifically their contentions that weddings should not be permitted in this Specific Plan Area despite the zoning and land use policies in favor of and encouraging applications for weddings.

99.    At one point during the hearing, the Planning Commission suggested the possibility of an express and codified moratorium and elimination of weddings and the matter was referred to the Board of Supervisors.

100.   During their deliberations, the Planning Commissioners expressed serious resistance to allowing weddings.   For example, in his remarks, one Commissioner stated:

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
62317623v1

> I cannot support . . . Well, the scope of the uses is well beyond anything that I could ever agree to ***and maybe the wedding situation is the worst possible use*** and I do agree that wine tastings and other things are certainly less problematic but the scope that is being requested here is far beyond anything I could come up with.

101.   This same Commissioner was not only biased against weddings in general, and has expressed similar sentiments in other hearings, but was also biased against Plaintiffs in particular.

102.   Limoneira Ranch is an agricultural-zoned property located in the County.  Plaintiffs are informed and believe and on that basis allege that Limoneira is a holder of a current County conditional use permit allowing weddings and that Limoneira Ranch is the site of a County-permitted commercial wedding venue, as described on its website found at http://www.limoneiraranchweddings.com.

103.   In or around 2014, Limoneira applied for a CUP modification approval from the County.  The referenced Commissioner was present during the hearing for the CUP modification approval.  However, when it came time for deliberations, the Commissioner recused himself, stating:

> I do have a conflict of interest.  I've represented Limoneira in the past. I've been a shareholder.  I'm general counsel for a corporation, which Limoneira is a majority shareholder in.   I represent significant shareholders in the company and I'm recusing myself.

104.   Plaintiffs are informed and believe and on that basis allege that the referenced Commissioner maintains a disqualifying financial stake in Limoneira, which, if Plaintiffs' conditional use permit application were approved, would thereafter be forced to compete against Plaintiffs.  The Commissioner was therefore financially interested in the subject of Plaintiffs' application, suffered from a conflict of interest and was disqualified from serving as a quasi-judicial officer over Plaintiffs' application.   Moreover, the conflict of the Commissioner infected the entire Commission.

105.   During the Planning Commission hearing, another Commissioner

Third Amended Complaint

PRINTED ON

RECYCLED PAPER
62317623v1

expressed similar sentiments to the disqualified Commissioner:

> I just don't think this is a compatible activity for this location.  We have events there, we have equestrian events.  We have filming there that goes on, there is no prohibition on that.  There is a permit process for that.  The applicant certainly has the right and probably the intent to continue doing that as the opportunities present themselves, as would any other resident here from that valley. . . .  I just think venues—wedding venues particularly in this location are not appropriate and are not compatible with the overall area and so I don't know that I can afford anything, support anything at that location regardless of number.

106.  Following the close of the public hearing, the Planning Commission voted to deny the application.

107.  Among other options available to the Planning Commission apart from an outright denial was the option to approve less events than sought by Plaintiffs over a limited amount of time to test the appropriateness of the site for temporary outdoor events.  The County had done just that for previous applications but denied that opportunity to Plaintiffs.

108.  Following the public hearing, the Planning Commission issued written findings supposedly justifying its decision.  The findings are set forth below verbatim:

(1)  The venue is not compatible with the rural community of Hidden Valley;

(2)  The venue has the potential to impair the utility of neighboring property or uses and is inconsistent with finding set forth in the NCZO § 8111-1.2.1.1.c.; and

(3)  The venue has the potential to be detrimental to the public interest, health, safety, convenience, or welfare and is inconsistent with the finding set forth in the NCZO § 8111-1.2.1.1.d.

109.  Notably, the findings make no mention of noise or traffic concerns.  Given the scientific studies in the record, and the County's review of those studies and conclusions based thereon, no such findings regarding noise or traffic were possible as the County had already concluded that Plaintiffs' application would entail

PRINTED ON RECYCLED PAPER 62317623v1

no significant, unmitigated impacts whatsoever.   The findings do not match the standards set forth in the County's ordinances and purport to deny Plaintiffs' application based upon allegedly "potential," rather than actual, impacts, which the County's experts had already determined to be non-existent.   Plaintiffs are informed and believe and on that basis allege that no other conditional use permit applicant had previously been subjected to the same non-ordinance based standards as applied to Plaintiffs.

110.   Plaintiffs are informed and believe and on that basis allege that the findings of the Planning Commission were pre-textual and that the Planning Commission's real motivation to deny the application was a content-based desire to discriminate against weddings, prevent Plaintiffs from holding weddings on the Property and apply its *de facto* moratorium on wedding uses in agricultural zoned areas.

111.   Plaintiffs appealed the denial of their application to the County's Board of Supervisors.   As part of the appeal, Plaintiffs revised their request from 60 events per year to 15 with an escalation clause to 30 in subsequent years if the events proved that all County noise, traffic and other standards were met.

112.   Prior to the appeal hearing, Plaintiffs re-engaged a noise expert to study the potential noise impacts of outdoor events at the location of the residences of the opponents of the application.   Plaintiffs also hired a DJ for the noise study to ensure the study was authentic.   The results of that testing was provided to the County and showed that any noise impacts upon the neighboring properties was *de minimus*, within County limits and the noise generated approximated the level of whispering. The evidence directly contradicted the false testimony of project opponents during the Planning Commission hearing.

113.   Plaintiffs also researched and submitted additional traffic reports and area-wide accident reports.   During the appeal hearing, the County's own traffic engineer indicated that he had conducted his own independent study and stated that

PRINTED ON

RECYCLED PAPER
62317623v1

1  traffic and accident levels were within normal parameters.

2  114.  Plaintiffs also requested permission to hold a test event, as other

3  applicants had been permitted, to show that any legitimate public or County concerns

4  had been and could be addressed and mitigated.  The County denied the request.

5  115.  The hearing on the application before the Board, like the hearing before

6  the Planning Commission, lasted multiple hours.  One Board member left suddenly at

7  the start of the hearing with Plaintiffs being informed.  Although Plaintiffs are

8  informed and believe that one or more Board member(s) had previously attended

9  unpermitted temporary outdoor events in Hidden Valley, no such disclosures were

10  made.

11  116.  At the conclusion of the hearing, the Board deadlocked 2-2, which the

12  County claims resulted in no action.  Had the Planning Commission decision been in

13  Plaintiffs' favor, the Board's action would have resulted in issuance of a CUP.

14  117.  Thus, as a result of the actions of the Planning Commission and Board of

15  Supervisors, Plaintiffs were denied a permit to engage in protected expressive

16  conduct pursuant to the unconstitutional regulations set forth in former NCZO §§

17  8102-0, 8105-4, 8111.1.2.1.1 and 8111.1.2.1.2 as described above.

18  **F.**   **Notices of Violation and Threatened Administrative Actions**

19  118.  The County issued to Plaintiffs notices of violation ("NOVs") for

20  weddings held at the Property without a conditional use permit approved pursuant to

21  former NCZO §§ 8111.1.2.1.1 and 8111.1.2.1.2, including the notice of violation

22  issued in connection with the permitted filming project as alleged above.  None of the

23  NOVs were issued based upon noise, traffic or any other related issues, but only

24  because of the allegation of weddings on the Property.

25  119.  On August 5, 2016, the County issued an NOV and Notice of Impending

26  Civil Administrative Penalties, assigned Planning Violation Case No. CV16-0350

27  (the "August 2016 NOV"), for alleged wedding events occurring at the Property on

28  July 16, 2016 and July 30, 2016.  The August 2016 NOV stated that the County

JMBM | Jeffer Mangels
Butler & Mitchell LLP

confirmed that a violation of the NCZO exists on the Property and that the alleged violation "must be corrected or abated immediately" or "additional enforcement will be taken."  According to the notice, "[a]batement can be achieved by immediately discontinuing use of [the P]roperty as a temporary outdoor event venue."  Further, "in order to operate the [P]roperty as a temporary event venue, you must obtain a [conditional use permit] from the County."

120.   The August 2016 NOV also stated that if the alleged violation "is not immediately and permanently abated – that is, if you do not refrain from operating the property as an unpermitted temporary outdoor event venue – the following enforcement actions may apply".   The notice described a range of threatened administrative actions unless Plaintiffs permanently cease the use of the Property for wedding events, including (1) the County would refuse to issue any new, or extend any current, ministerial or discretionary permit in respect to any use or structure existing on the Property; (2) the County would record a notice of noncompliance, which would not be released until Plaintiffs pay all fees and charges imposed by the County; and (3) the County will issue a Notice of Imposition of Civil Administrative Penalties advising Plaintiffs of the amount of daily monetary penalties that will be imposed against the Property.  The notice stated that the penalties shall accrue each day and constitute a lien against the Property.

121.   The County issued to Plaintiffs under its unconstitutional ordinance at least 6 NOVs over 2 years citing Plaintiffs for holding weddings.  The County also threatened to issue additional NOVs for Plaintiffs' private events and weddings.

122.   Each of the NOVs issued to Plaintiffs remain of record, have not been expunged and continue to have negative ramifications for Plaintiffs.  Even closed violations are routinely used by the County for adverse action.  For example,  the County cited allegedly "closed" violations as a basis when it denied Plaintiffs' conditional use permit application for weddings.

123.   Given the County's actions and statements to Plaintiffs, Plaintiffs were

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    also reluctant to use their Property for any sort of gathering, social, private, religious

2    or otherwise.  Plaintiffs' right to privacy, association, assembly, free exercise and

3    speech have been and are being curtailed.

4        124.   Each of the wedding events for which Plaintiffs received NOVs from the

5    County involved and amounted to expressive conduct and religious assemblies

6    protected by the United States and California Constitutions.  Each of the NOVs were

7    also issued when the Governing Ordinance was in force.

8        125.   The weddings for which Plaintiffs received NOVs included religious

9    rituals and symbolism, presided over by religious officials, to express and convey,

10   among other things, the participants' religious beliefs and commitments and the

11   commitment of the participants to one another and their communities.

12   ### G.   The County's Selective and Discriminatory Enforcement

13       126.   Prior to the institution of the *de facto* moratorium by the County

14   precluding weddings in agricultural zoned areas, the County previously approved

15   conditional use permits for temporary outdoor events at many other similarly-situated

16   County locations, including in the area governed by the Hidden Valley/Lake

17   Sherwood Area Plan.

18       127.   For example, the County issued a conditional use permit for temporary

19   outdoor events to the Lake Sherwood Country Club.  In connection with that

20   approval, the County determined that a permit allowing 175 outdoor events per year

21   ranging from 200 to 1,000 guests with amplified sound allowed until 11:00 p.m.

22   would be consistent with the surrounding community.  In so doing, the County

23   approved an application for more events imposing greater environmental impacts

24   than Plaintiffs' application.  Because both properties are near one another in the

25   Hidden Valley community, surrounded by properties with similar zoning and

26   character, the two are similarly situated.

27       128.   The County had no justification for the treating the applications

28   differently and approving the Lake Sherwood application while denying Plaintiffs'.

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    In fact, the only reason the County approved the Sherwood Country Club application

2    while denying Plaintiffs' was the fact that the former was applied for and decided at a

3    time before the County instituted its *de facto* moratorium.

4          129.   Plaintiffs are informed and believe and on that basis allege that, prior to

5    the imposition of the *de facto* moratorium, the County issued conditional use permits

6    for temporary outdoor events to the following properties all of which are similarly

7    situated to Plaintiffs and Plaintiffs' Property:  Lake Sherwood Country Club, Bell

8    Canyon Community Center, Piru Mansion, McCormick Ranch, Bella Victoria-

9    Monahan, Walnut Grove Tierra Rejada Ranch, Gerry Ranch, Maravilla Gardens,

10   Eden's Gardens, Limoneira, Rancho de Las Palmas, Los Posas Country Club and

11   Hartley Botanica, among others.

12         130.   Each of the foregoing properties was approved for wedding uses prior to

13   the institution of the *de facto* moratorium.  The only reason these properties were

14   permitted but Plaintiffs' was not was because these applications were submitted and

15   decided prior to the institution of the *de facto* moratorium.

16         131.   Plaintiffs are informed and believe and on that basis allege that each of

17   the foregoing properties was permitted more than three years ago and that the County

18   thereafter refused to approve additional CUPs for weddings regardless of the merits

19   of the applications.

20         132.   The County's actions created a monopoly upon wedding uses and this

21   particular form of religious assembly and expression by the few properties that

22   obtained a conditional use permit prior to the institution of the *de facto* moratorium.

23   Such venues now prominently display in their advertisements a badge indicating their

24   County-approved status allowing them to further monopolize religious and speech-

25   related activities.

26         133.   Plaintiffs are informed and believe and on that basis allege that the

27   County has treated this application and this Property owner differently than any other

28   conditional use permit application and any other similarly-situated property owner,

PRINTED ON

RECYCLED PAPER
62317623v1

1   without a rational basis for the discriminatory treatment, at each stage of the process

2   causing additional delays, expense and damage.

3         **H.**    **Plaintiffs Suffer Substantial Monetary Damages**

4         134.  As a result of the County's insistence that Plaintiffs seek and obtain a

5   conditional use permit prior to engaging in protected activity, its denial of Plaintiffs'

6   application and the issuance by the County of repeated NOVs in connection with

7   protected activity, Plaintiffs were prevented from holding events at the Property and

8   thereby incurred substantial damages, including damages to their reputation, in an

9   amount to be proven at the trial of this action.  Additionally, Plaintiffs' unrelated, pre-

10  existing permits for farmworker housing were also refused time extensions based

11  upon the County's unconstitutional application of its ordinances to Plaintiffs, negating

12  Plaintiffs' ability to proceed with integral vineyard and horse ranch operations and

13  refinancing.

14        **I.**    **The County's Pre-Appeal Amendment to the Governing Ordinance**

15        135.  On December 9, 2016—one week after a hearing in this matter on a

16  Motion for Preliminary Injunction brought by Plaintiffs—the County gave notice that

17  it had "initiated the process to amend" the Governing Ordinance (the "Pre-Appeal

18  Amendment").  The Pre-Appeal Amendment was proposed and ultimately adopted in

19  direct response to this litigation.

20        136.  The Pre-Appeal Amendment was presented to the County's Planning

21  Commission on January 12, 2017.  During the course of the Planning Commission

22  hearing, County counsel asserted that the Pre-Appeal Amendment was "precipitated"

23  by this lawsuit, noting that "it has come up in – in – in a lawsuit that the County is

24  litigating right now, and so by approving it now  . . we will also be helping the

25  County in a – a lawsuit that we're involved with."  Subsequently, he acknowledged

26  the lawsuit "arises out of the – the Epona wedding venue project."

        And – and so – right. I'll – I'll leave it at that.  It's a federal – it's a
        federal lawsuit, and – and it's kind of interesting.  The –the changes

PRINTED ON
RECYCLED PAPER
62317623v1

that we're making, they'll help us under federal law, and hopefully, I'm not boring you too much, but under federal law, when a project involves a use that could implicate someone's First Amendment rights, there's – there's an – there's a rule that permit approval standards or denial standards can't give the decision-making authority too much discretion to deny a permit application, the rationale being that you don't want a decision-maker who doesn't like protect – protect – protected expression to just say, oh, I don't like the project, you know, too bad for you, and then deny it without even giving any reason.

And so, you know, under constitutional law, the courts worry that that could – that could cause projects to be denied, you know, for either pre-textual reasons or no reasons, but the true reason being, someone doesn't like a church, or someone's protected – protected – protected expression.

. . . .

[The judge in this case] did point out that – her concern that our ordinance, by not having – by not specifically requiring findings of denial, and by having this kind of wishy-washy "may" language, instead of "shall," in terms of project approval, we – we could fit within the box where we're giving too—much discretion to the – the – our decision-makers . . . .

137.   The Pre-Appeal Amendment was approved by the Planning Commission during its hearing on January 12, 2017.  The County's Board of Supervisors approved the Pre-Appeal Amendment on February 7, 2017.  The Pre-Appeal Amendment became effective as of March 9, 2017.

138.   The County described the Pre-Appeal Amendment as non-substantive— *i.e,* merely "clarify[ing] the County's existing and historical practices" and also presented it as such to the County's Planning Commission and Board of Supervisors, assuring both bodies that the amendment would have virtually no impact upon current County practices under the previous version of NCZO § 8111-1.2.1.1.  Before the Board, counsel stated that the Pre-Appeal Amendment would not change the amount of discretion vested in the County permitting officials, stating that the County would

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

have the "exact same amount of discretion before [] and after this [Amendment]."

**J.**     **Plaintiffs' Vested Rights to Conduct Weddings and the County's**
**Further Amendment to the Governing Ordinance**

139.   On December 7, 2017, the Ninth Circuit issued an opinion is this case. The Ninth Circuit held that the Governing Ordinance and the Pre-Appeal Amendment amounted to an unconstitutional prior restraint on protected speech by vesting permitting officials with unbridled discretion due to the CUP scheme's lack of definite and objective standards for granting a permit.  The Court noted that since the Governing Ordinance and Pre-Appeal Amendment required satisfaction of seven conditions, an impermissible degree of discretion in just one required invalidating the entire scheme.  Further, the Court held that five of the conditions failed to provide definite and specific guidance to permitting officials to sufficiently cabin their discretion requiring that the entire scheme be invalidated to the extent it regulated weddings.   Moreover, the Court held that the NCZO's failure to provide any limitation on the time period within which a permit must be approved further compounded the problem.

140.   Because the County did not have a valid ordinance on its books regulating the use of land for weddings at the time Plaintiffs applied for a CUP, Plaintiffs' right to conduct weddings on the Property was unconditionally permitted.

141.   On January 4, 2018—less than one week after the judgment from the Ninth Circuit in this case took effect—the County gave notice that it had "initiated the process to further amend" the ordinance and had "proposed amendments to section 8102-0 (description of terms), section 8111-1.2.1.1 (permit approval standards) and section 8111-2.5 (review and conditioning of applications)" (the "Post-Appeal Amendment").  On February 6, 2018, the County's Board of Supervisors approved the Post-Appeal Amendment.   The Post-Appeal Amendment was proposed and ultimately adopted in direct response to this litigation.

142.   On March 9, 2018, the District Court granted Plaintiffs' preliminary

Third Amended Complaint

PRINTED ON
RECYCLED PAPER
62317623v1

1   injunction, based not only on the Governing Ordinance and Pre-Appeal Amendment,

2   but also on the Post-Appeal Amendment, finding that, as amended, it still granted the

3   decision maker with unbridled discretion and was likely unconstitutional.

4      143.   Following the District Court's ruling, the County began taking steps to

5   further amend the challenged provisions of its NCZO.  The Further Amendment was

6   presented to the County's Planning Commission on June 21, 2018 and was approved

7   by the Planning Commission during its hearing.  The Board of Supervisors approved

8   the Further Amendment on July 17, 2018.

9      144.   The Further Amendment eliminated the defined term "Festivals, Animal

10   Shows, and Similar Everts, Temporary Outdoor" in Section 8102-0 and replaced it

11   with the definition "Outdoor Events," which reads in part: "An outdoor event held in

12   a stationary location, on a privately owned parcel in the Open Space, Agricultural

13   Exclusive, Rural Agricultural, or Commercial Planned Development zone at which

14   the primary event activities occur outside of structures, such as harvest festivals;

15   carnivals; historic re-enactments; animal events; art shows; athletic events' concerts'

16   craft fairs' farmer's markets' receptions; ceremonies' fundraisers' social, political,

17   spiritual or organizational gatherings' and similar events except for those that are

18   either separately regulated under this Chapter, addressed by a permit or entitlement

19   issued under this Chapter or that occur at a permitted school or college."

20      145.   The Further Amendment also created a new section 8107-46, which

21   states in part that its purpose "is to regulate outdoor events to ensure they are

22   compatible with surrounding land uses and are not detrimental to public health and

23   safety or the environment.  This Sec. 8107-46 does not apply to any event that is

24   either (a) attended by 75 or fewer total 'attendees' (a term which, as used in this Sec.

25   8107-46, includes guests, staff, vendors, and any other persons in attendance) over

26   the course of an event on a lot smaller than 250 acres, or (b) attended by 100 or fewer

27   attendees over the course of an event on a lot that is either greater than 250 acres or,

28   when combined with other contiguous lots under common ownership, totals 250 or

PRINTED ON
RECYCLED PAPER
62317623v1

more acres.  This Sec. 8107-46 also does not apply to any event at which the primary event activities occur within dwellings or other structures."

146.  The Further Amendment also created a new section 8107-46.5, which states in part: "(a) No application for a Conditional Use permit pursuant to Sec. 8107-46.4 shall be accepted for processing if final violations (i.e., violations that were not timely appealed or were confirmed after timely appeal) have been issued for holding two or more outdoor events on the parcel within the previous 24 months without a Conditional Use Permit if required pursuant to Sec. 8107-46.4. (b) Applications for all Conditional Use Permits under Sec. 8107-46.4, and applications for all discretionary modifications thereto, not involving legislative actions shall be processed in accordance with the time limits set forth in the Permit Streamlining Act (Gov. Code, § 65920 et seq.), regardless of whether or not the proposed outdoor event use constitutes 'development' as defined by Government Code section 65927.  Failure to comply with any time limit set forth in the Permit Streamlining Act shall not constitute a basis for the denial of any such permit application."

147.  The new section 8111-1.2.1.1b in the Further Amendment sets forth standards that apply to applications for CUPs and provides, in part, that "[t]he applicant shall have the burden of proving to the satisfaction of the appropriate decision-making authority that the following standards can be met.  Specific factual findings shall be made by the decision-making authority to support the conclusion that each of these standards, if applicable, can be satisfied.

   a.   The proposed use is compliant with applicable provisions of the County's General Plan and of Division 8, Chapter 1 of the Ventura County Ordinance Code;

   b.   The proposed use can coexist in relative proximity, and is not expected to unduly interfere with, the existing land uses of the surrounding area …

   c.   The proposed use would not be detrimental to public health and safety …

Third Amended Complaint

d.      The proposed use will occur on a legal lot; and

e.      The proposed use is approved in accordance with the California Environmental Quality Act and all other applicable laws."

148.   Section 8111-6.2 in the Further Amendment now reads, in part: "Any permit or variance heretofore or hereafter granted may be modified or revoked, or its use suspended, by the same decision-making authority and procedure which would normally approve the permit or variance under this Chapter … The applicant for such modification, suspension or revocation shall have the burden of proving one or more of the following causes … d. That the use for which the permit or variance was granted has been so exercised as to constitute a public nuisance[.]"

149.   The County's regulations governing wedding ceremonies, including the Further Amendment, are unconstitutional on their face, including but not limited to, for the following reasons:

(1) The Further Amendment creates unreasonable delays in processing a CUP application, including by limiting approval under section 8107-46.5 on the basis of violations, the issuance of which vest the County with unbridled discretion.

(2) The Further Amendment provides for arbitrary limits on the number of attendees and events for permitted events for no legitimate purpose.

(3) The Further Amendment does not make any distinction between private and public events, even though the impact of private and public events, including to the environment, may differ drastically.

150.   Plaintiffs have a right to continue to conduct weddings on their Property as a legal nonconforming use.  Prior to the County's unlawful issuance of multiple NOVs, Plaintiffs had already established the use of their Property for weddings by bookings and holding same.

151.   Plaintiffs have a vested right to continue to conduct weddings on their Property.  Plaintiffs sought to establish wedding uses pursuant to duly-obtained building permits, pursuant to which Plaintiffs constructed facilities for holding

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

weddings at the cost of millions of dollars.

152.   Regardless of the status of the current County regulations governing weddings, Plaintiffs' right to use their Property for weddings remains protected by federal, state and local law.  Almost three years ago, Plaintiffs applied, at the County's direction, for County approval to hold weddings on their Property.  At the time, the County did not have a valid ordinance on its books regulating the use of land for weddings.  Consequently, the "expressive activities" Plaintiffs sought to engage in were "*unconditionally* permitted" at the time according to the Ninth Circuit.

153.   Plaintiffs invested millions of dollars in the Property, including millions of dollars just in permitting, construction and other fees and costs specifically attributable to the establishment of the facilities necessary to hold weddings.  Plaintiffs also obtained over a dozen building permits to lawfully erect structures and began holding weddings, thereby lawfully establishing the use.

## FIRST CAUSE OF ACTION

**(As-Applied Constitutional Challenge Based upon First Amendment of the United States Constitution and California Constitution Article 1, Section 2)**

154.   Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 153 above as if fully set forth herein.

155.   Under County regulations established by the Governing Ordinance, a conditional use permit is required before a person may engage in protected expressive conduct upon agricultural lands in the County, including the Property.

156.   As alleged above, the County violated Plaintiffs' Constitutional rights by denying Plaintiffs' CUP application, and denying them the right to use their Property for First Amendment purposes, based upon a facially-unconstitutional ordinance and by exercising unbridled discretion over the CUP application.  In addition, the County discriminated against Plaintiffs and proposed religious assemblies on Plaintiffs' Property for content-based reasons given its opposition to and biases against

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

weddings.   The County instituted and applied against Plaintiffs an illicit *de facto* moratorium against weddings in agricultural-zoned areas and Hidden Valley specifically.   The County discriminates against weddings in favor of other forms of speech and the messages they convey and against religious assemblies in favor of other forms of assemblies.   Such conduct is in violation of the First Amendment of the U.S. Constitution and the free speech and religion provisions of the California Constitution, Article 1, Section 2.

157.   The County's actions imposed unjustifiable burdens upon protected expression, expressive conduct, and the free exercise of religious practice, which are not reasonable in light of the purposes served by the forum.   As alleged above, the County's actions were taken for content based reasons.   The County discriminated against religious assemblies.

158.   Plaintiffs are entitled to engage in protected expressive conduct and host religious assemblies on their Property as a matter of right and unburdened by the unconstitutional restraint upon their expressive activities.   The County had no legitimate zoning or other justification to prevent Plaintiffs from engaging in protected expressive conduct or hosting religious assemblies.   Plaintiffs sought approval from the County prior to engaging in constitutionally-protected speech and assembly.  The County denied Plaintiffs' application.

159.   The County has acted under color of statute, ordinance, regulation and policy of the municipality.

160.   As a direct and proximate result of the County's actions, Plaintiffs have suffered damages and will continue to suffer damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Facial Constitutional Challenge Based upon First Amendment of the United States Constitution and California Constitution Article 1, Section 2)**

161.   Plaintiffs incorporate by reference the allegations in Paragraphs 1

PRINTED ON
RECYCLED PAPER
62317623v1

through 160 above as if fully set forth herein.

162.   Under County regulations established by the Further Amendment, a conditional use permit is required before a person may engage in protected expressive conduct upon agricultural lands in the County, including the Property.  The process of approval of such a permit, including the lack of any time constraints for issuance, impose unjustifiable burdens upon protected expression and expressive conduct, which are not reasonable in light of the purposes served by the forum.  The County's regulations governing wedding ceremonies, including the Further Amendment, are unconstitutional on their face.

163.   The regulations imposed by the County's ordinances have a close nexus to expression, or conduct commonly associated with expression, and pose a real and substantial threat of the risks of censorship.

164.   The regulations established by the County's ordinances constitute an illicit prior restraint upon protected speech.

165.   As a direct and proximate result of the County's actions, Plaintiffs have suffered damages and will continue to suffer damages in an amount to be proven at trial.

166.   In addition, Plaintiffs are informed and believe and thereon allege that unless and until restrained by this Court, the County will continue to apply the unconstitutional regulations described herein and refuse to permit Plaintiffs' application to engage in protected speech and expressive conduct.

167.   Unless the County is enjoined and restrained from engaging in such conduct, Plaintiffs will be irreparably injured and deprived of Constitutional rights guaranteed under the state and federal Constitutions, will suffer substantial loss of license fees and goodwill, the nature and extent of which will be extremely difficult or impossible to ascertain.

168.   Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injury alleged herein.

Third Amended Complaint

**THIRD CAUSE OF ACTION**

**(Civil Rights Violations, 42 U.S.C. § 1983)**

169.   Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 168 above as if fully set forth herein.

170.   By its acts in processing and disapproving Plaintiffs' application pursuant to a facially-unconstitutional ordinance and through the exercise of unbridled discretion, refusing to allow Plaintiffs to use their Property for weddings and other religious and charitable events, subjecting Plaintiffs' CUP application to a biased Planning Commission tainted with an unlawful conflict of interest and issuing the NOVs described herein, the County and its representatives, while acting in their administrative capacities, knowingly and intentionally deprived Plaintiffs of their rights under the United States and California Constitutions and federal laws, including, but not limited to the free speech provisions of the United States and California Constitutions, the Fifth and Fourteenth Amendments of the United States Constitution and 42 USC §1983, and acted in conscious disregard to Plaintiffs' clearly established rights.  The County's actions and regulations, as applied to the Property, constitute a violation of Plaintiffs' right to free speech and religious assembly, as alleged herein.

171.   The County denied Plaintiffs' CUP application based upon the Governing Ordinance, which was unconstitutional and amounted to an illicit prior restraint upon expressive conduct.

172.   By virtue of the foregoing, the County, acting under the color of the laws of the State of California, and the laws, regulations and customs of the County, deprived Plaintiffs of the rights and privileges secured by the United States Constitution and laws.

173.   As a direct and proximate result of the foregoing, Plaintiffs have been damaged in an amount not yet ascertained, but which will be proven at trial.

174.   Plaintiffs are entitled to attorneys' fees pursuant to 42 USC § 1988.

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

# FOURTH CAUSE OF ACTION

## (Petition for Writ of Mandate; California Code of Civil Procedure § 1094.5)

175.  Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 174 above as if fully set forth herein.

176.  California Code of Civil Procedure § 1094.5 provides that in matters involving a final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior agency, a writ of mandate shall issue where (1) the agency has proceeded without, or in excess of, jurisdiction,(2)  the agency failed to provide a fair trial, or (3) the agency commits a prejudicial abuse of discretion.

177.  An abuse of discretion is established if the agency has not proceeded in the manner required by law, its order or decision is not supported by the agency's findings, or the findings are not supported by the evidence.

178.  Plaintiffs are the owners of the Property and the permit applications and are beneficially interested in the subject of this litigation.

179.  The County failed to provide Plaintiffs with a fair hearing in that, in denying Plaintiffs' conditional use permit application, the County adopted a *de facto* moratorium on religious and other wedding events on agricultural lands in violation of applicable law and subjected Plaintiff's CUP application to a biased decisionmaker infected with an unlawful conflict of interest.

180.  The County's decision to deny the application amounted to an abuse of discretion because, among other things, the County's decision was not supported by its findings and the County's findings are not supported by substantial evidence.

181.  Plaintiffs have exhausted all required administrative remedies, or are excused from exhausting their remedies as a result of the futility of pursuing such remedies, among other things.

182.  Plaintiffs have no administrative remedy and have no plain, speedy or

Third Amended Complaint

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    adequate remedy in the ordinary course of law.  The only remedy provided by law for
2    Plaintiffs to obtain relief is this Petition for Writ of Mandate pursuant to California
3    Civil Procedure Code § 1094.5.

4          183.   Because of the County's unlawful acts, Plaintiffs have had to employ
5    attorneys to bring this litigation.  Plaintiffs have incurred and will incur substantial
6    attorneys' fees and litigation costs.   This litigation, if successful, will result in
7    enforcement of important rights affecting the public interest, including the rights of
8    property owners in the County to engage in protected expressive conduct making an
9    award of attorneys' fees under California Civil Code § 1021.5 appropriate.

10                        **FIFTH CAUSE OF ACTION**
11                          **(Declaratory Relief)**

12         184.   Plaintiffs incorporate by reference the allegations in Paragraphs 1
13   through 183 above as if fully set forth herein.

14         185.   An actual controversy exists among Plaintiffs and the County inasmuch
15   as Plaintiffs contend, and the County disputes, that (1) the Governing Ordinance to
16   which Plaintiffs' CUP application was subjected was unconstitutionally applied to
17   Plaintiffs and Plaintiffs' Property; (2) the County's practice of permitting assemblies
18   on County property for filming purposes by right while denying a property owner the
19   right to film an assembly gathered to participate in a wedding is an illicit content-
20   based free speech violation; (3) the County has improperly and unlawfully refused to
21   process unrelated farm worker dwelling permits on account of the County's own
22   unlawful conduct as alleged herein; (4) Plaintiffs have a right to continue to conduct
23   weddings on their Property as a legal nonconforming use; and (5) Plaintiffs have a
24   vested right to continue to conduct weddings on their Property.

25         186.   Plaintiffs desire an immediate declaration of their rights arising out of all
26   of the facts and circumstances alleged herein and the concomitant obligations of the
27   County.   Such declaration is necessary and appropriate at this time inasmuch as
28   Plaintiffs are irreparably injured and will continue to suffer irreparable injury until

PRINTED ON
RECYCLED PAPER
62317623v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

such time as a declaration of their rights is made.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.      For an Order requiring the County to issue Plaintiffs a permit for the holding of weddings on their Property;

2.      For a permanent injunction prohibiting the County from further enforcing or applying the Governing Ordinance, the Pre-Appeal Amendment, the Post-Appeal Amendment, or the Further Amendment to prevent Plaintiffs from conducting weddings (including wedding ceremonies and receptions) on the Property.

3.      For a permanent injunction prohibiting the County from enforcing or taking any adverse action against Plaintiffs because of any NOVs or similar notices that were issued by the County because of weddings (including wedding ceremonies and receptions) that Plaintiffs have held on the Property.

4.      For a declaration of the rights and duties of the parties as requested herein above;

5.      For an order expunging and declaring null and void any and all notices of violation or similar notices issued to Plaintiffs on account of weddings held at the Property;

6.      For compensatory damages in an amount to be determined at trial;

7.      For attorneys' fees pursuant to 42 U.S.C § 1988, California Civil Code §1021.5 and any other applicable provision of state or federal law;

8.      For costs of suit herein; and

9.      For such other and further relief as the Court may deem just and proper.

PRINTED ON
RECYCLED PAPER
62317623v1

1    DATED:  August 3, 2018        JEFFER MANGELS BUTLER & MITCHELL LLP
                                    BENJAMIN M. REZNIK
2                                   MATTHEW D. HINKS
                                    TALYA GOLDFINGER
3

4
                                    By: */s/ Matthew D. Hinks*
5                                            MATTHEW D. HINKS
                                    Attorneys for Plaintiffs EPONA, LLC and MICHAEL
6                                   FOWLER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER
62317623v1

Third Amended Complaint

1

## DEMAND FOR JURY TRIAL

2

3          Plaintiffs hereby demand a jury trial as provided in Rule 38 of the

4   Federal Rules of Civil Procedure and Local Rule 38-1.

5

6

7   DATED:  August 3, 2018        JEFFER MANGELS BUTLER & MITCHELL LLP
                                   BENJAMIN M. REZNIK
8                                  MATTHEW D. HINKS
                                   TALYA GOLDFINGER
9

10                                 By: */s/ Matthew D. Hinks*
                                            MATTHEW D. HINKS
11                                 Attorneys for Plaintiffs EPONA, LLC and MICHAEL
                                   FOWLER
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Third Amended Complaint